Andrew v. Deshler.

WILLIAM E. ANDREW v. CHARLES D. DESHLER.

1. In actions for slander of title, the one hundred and twenty-fourth sec-
   tion of the Practice act is applicable, so that any meaning deemed
   advisible by the plaintiff, may be imputed to the words.
2. In pleading, it is sufficient to allege that the words are false and mali
   cious, without laying a *scienter*, even when the words may have been
   part of a privileged communication.

Andrew v. Deshler.

The declaration stated that plaintiff being the owner of a certain patent right which had been granted to him by letters patent of the United States, entitled "Improvement in processes and apparatus for rendering fats," was in negotiation with certain designated persons for the sale by him of certain interests therein, and that the defendant knowing the premises, wrongfully and injuriously, falsely and maliciously, did publish, and cause to be published in a certain newspaper called "The Chicago Daily Tribune," published and circulating in the said city of Chicago, in the State of Illinois, and elsewhere, of and concerning his said letters patent, and his title and interest in the same, a certain false, malicious and defamatory libel, in the words and figures following, that is to say:

To all whom it may concern :

The United States Dairy Company, the sole owners of the patents of Hyppolite Mege, Paris, for the United States, for the discovery and manufacture of the butter-like product or oleomargarine, or fat rendered at temperatures that will produce a product free from disagreeable taste or odor, and of every derivation or product therefrom, or from animal fats, including the manufacture of butter, butterine, oleomargarine butter, and all butter made from the aforesaid product, hereby caution the public against engaging in the manufacture of any of the aforesaid products, or in vending or otherwise dealing in the same, under the authority of any party or parties claiming to have subsequent patents for the above purposes, or any of them, as they will thereby render themselves liable to prosecution for infringement and damages. Suits are now pending in the United States Circuit Court against parties using the Andrew Patent (meaning the said patent of said plaintiff.) A final injunction and decree were obtained against the said Andrew (meaning the said plaintiff) and his associates, in the Circuit Court of the United States for the Southern District of New York, as may be seen by reference to the record of said court.

The United States Dairy Company gives this cautionary

Andrew v. Deshler.

notice to save innocent parties from the cost and litigation that will follow upon their engaging in any act of infringement upon its patented rights, and also to disable them from pleading ignorance when suits are brought against them.

New York, March 10th, 1880.

C. D. DESHLER,
*Secretary of the United States Dairy Co.*

And the plaintiff saith the words and matter of said publication were used in a defamatory sense by said defendant, thereby intending to create the impression and belief that the letters patent thus as aforesaid granted to said plaintiff were not valid and did not secure to said plaintiff any right or title to the claims mentioned in the specification annexed thereto, and that suits were then pending in the United States Circuit Court against parties using the said patent of said plaintiff, and that a final injunction and decree had been obtained against the said plaintiff and his associates in the Circuit Court of the United States for the Southern District of New York, restraining him and them from the use of the processes and apparatus for rendering fats, mentioned and described in the specification forming a part of his said letters patent, and that said plaintiff was guilty of fraud and misrepresentation in inducing or attempting to induce parties to contract with him for the use of his said patented improvement.

Special damage is then shown.

There was a demurrer to the declaration.

Argued at November Term, 1880, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and KNAPP.

For the defendant, *J. D. Bedle.*

For the plaintiff, *John Linn.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.    This is an action for an

alleged slander of the title of the plaintiff in a certain patent right granted to him by the United States; and the first subject of inquiry is, whether the one hundred and twenty-fourth section of the Practice act, (*Rev.*, *p.* 868,) is applicable to it. The language of that provision is this : " In all actions of libel and slander the plaintiff shall be at liberty to aver that the words or matter complained of were used in a defamatory sense, specifying such defamatory sense, without any prefatory averment to show how such words or matter were used in that sense, and such averment shall be put in issue by the denial of the alleged libel or slander; and where the words or matter set forth, with or without the alleged meaning, show a cause of action, the declaration shall be sufficient."

This regulation is remedial. In the ancient method of pleading, there was many times great difficulty in adjusting the innuendoes to the *colloquium*, so that oftentimes, judgments had to be reversed, inasmuch as it appeared that the deductions from the former were not the legal expressions of the latter. In *Goldstein* v. *Foss*, 6 *Barn. & Cress.* 154, and in the same case on appeal in the Exchequer, 4 *Bing.* 489, the judgment was avoided on error, on the ground that the innuendo was not warranted or supported by the averment in the inducement. There can be no doubt but that the doctrine in some of the decisions was run into excessive refinement, and thus produced a disfigurement of the law. And accordingly, with a view to its removal, section 61 of the common law procedure act was passed by parliament in the year 1852; a provision which has been literally incorporated into our legislation, and which is the statutory clause above recited. Such was declared to be the purpose of this amendment in *Hand* v. *Winton*, 9 *Vroom* 122.

Looking thus at the history and purpose of this enactment, no solid reason is perceived by me why it should not be deemed regulative of the class of actions which embraces the present one. Remedies of this kind are plainly within the language of the act, for it applies, in terms, to " all " actions of slander, and these are of that sort. Nor is there any sub-

stantial difference between an action for slander of a title to property and an action for slander of the person, when in the latter instance the words are actionable only on the ground of the special damage which has resulted. But whether or not such close similarity exists, the statute must be taken to apply in this and in similar cases, because they are not only within the words of the act, but they are also within the mischief to be remedied; for the same technicality in pleading prevailed according to the old mode, in suits for defamation of title as in suits for defamation of character, there being the same difficulty in making the innuendoes congruous with the *colloquium.* I think the statutory provision applies, and the pleadings in the present case must be tested by it.

By the adoption of this measure of judgment, it does not seem to me that the sufficiency of this declaration can be reasonably questioned. The plaintiff, in exercising his statutory right, interprets the words of the defendant, and that interpretation imputes to them a slanderous force. This, in brief, is the charge he makes, viz.: that he being the owner of a patent was endeavoring to sell an interest to various persons, when the defendant published the writing in question, which he construes in the sense of creating the impression that such letters patent were not valid, and that their use had been judicially enjoined, and that the plaintiff was guilty of a fraud and misrepresentation in attempting to induce parties to contract with him for the use of such patented improvements. Were we to add to this the fact that the plaintiff, in his declaration, also avers that such statements were false and malicious, and that damages had resulted in consequence of them, it does not seem to me that it can be reasonably said that a legal cause of action is not here exhibited.

It is said in the brief of the counsel of the defendant, that as the defendant was not a stranger to the transaction to which the alleged slanderous publication relates, but is the secretary of the company, having an interest in it, the presumption must be that the act done was *bona fide,* and that a want of probable cause, or at least a knowledge by the defendant of the falsity

of the notice, should have been shown. But this objection over-looks the meaning, in law, of the epithet " malicious," which in its application in such instances, does not indicate that ill-will, or any particular state of mind exists leading to the defamatory statement, but simply imports a negation that there was any just cause or excuse for its publication. Nor have I found that in those cases in which the statement of the circumstances in the declaration would seem to indicate the probability that such statement was a privileged communica-tion, that it has been usual in pleading to do anything more that to aver, in a general way, that the publication was false and malicious. Such are the forms in suits against masters for false and malicious libels in giving the character of their servants, for in such declarations we do not find any aver-ments that such libels were false to the knowledge of the mas-ter, nor any negation of a just and probable cause for his belief in the truth of the statement so made. See 2 *Chit. Pl.* 630, *a.* And yet these are instances of privileged communica-tions, and it is plain that it is impossible to do more in favor of the present case than to put it on a par with them. It may well be, as is contended for in behalf of the defendant, that he had the right to make the present publication if he did this act in good faith and in an honest belief in its truth, no matter how much in error he may, in point of fact, have been with respect to such convictions ; but such a consideration cannot affect the question as to the form of the pleading. If the defend-ant shall put in the plea of the general issue in this case, such plea will not only deny the fact of publication, but also that such publication was malicious, which will put the burthen upon the plaintiff of showing, at the trial, either malice in law or malice in fact, before he can claim a verdict. The counts in this declaration are certainly not framed with anything like technical skill, and their defects in this respect have, probably, provoked these objections; but I think they must prevail against a general demurrer.